F I L E D
CLERK OF COURT

2026 JUN 15 PM 2:38.

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

vs.

ARLENE CASTRO POCAIGUE,
DOB: 08/14/1983

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

CRIMINAL CASE NO. **CF0651-19**
GPD Report No. 19-35334

**DECISION & ORDER
RE. PEOPLE'S MOTION TO REVOKE
DEFENDANT'S PROBATION**

This matter came before the Honorable Alberto E. Tolentino on March 19, 2026, for a Revocation Hearing. Defendant Arlene Castro Pocaigue ("Defendant") was present with counsel Public Defender Earl Espiritu. Assistant Attorney General Samuel Alexander was present for the People of Guam ("People"). The court heard the parties' arguments on the People's Motion to Revoke the Defendant's Probation ("Motion"). Following the hearing, the court took the matter under advisement pursuant to Supreme Court of Guam Administrative Rule 06-001, CVR 7.1(e)(6)(A) and CR 1.1 of the Local Rules of the Superior Court of Guam. Having duly considered the parties' briefings, oral arguments, and the applicable law, the court now issues this Decision and Order **GRANTING** the People's Motion to Revoke the Defendant's Probation.

### BACKGROUND

Based on events that occurred on or about December 4, 2019, the Defendant was charged with POSSESSION OF A SCHEDULE II CONTROLLED SUBSTANCE (As a 3rd Degree Felony). *See* Indictment (Dec. 13, 2019). After being deemed legally and clinically eligible to

participate in the Adult Drug Court I Program, the court deferred the Defendant's guilty plea conditioned on the Defendant's successful completion of the terms of her Plea Agreement. *See* Deferred Plea Agreement (Mar. 4, 2020).

**A. Defendant Pocaigue received eleven (11) violations in Adult Drug Court.**

Upon the Defendant's entry into the Adult Drug Court I Program, she progressed through Phase I of the program without violation. However, the Defendant obtained a total of eleven (11) violations: nine (9) during Phase II and two (2) during Phase III.

Although the Defendant appeared in court-ordered hearings, she received her first two violations for failing to report to the Probation Office for her scheduled drug tests. *See* 1st Violation Report (Nov. 19, 2020); *see also* 2nd Violation Report (Jan. 14, 2021). For the third violation, the report indicated that the Defendant submitted to a drug test, which yielded presumptive positive results for methamphetamine. *See* 3rd Violation Report (Jan. 28, 2021). For the fourth violation, the report indicated that the Defendant:

> Failed to refrain from ingesting/consuming illegal controlled substances. In April 2, 2021 the probationer submitted to a drug test at the Probation Office which yielded presumptive positive results for methamphetamines. The probationer denied using any illegal drugs and her urine sample was sent for off-island confirmatory testing. On April 12, 2021 the Probation Office received confirmed results that the probationer's urine was positive for methamphetamine.

> Failed to report to the Probation Office [five] (5) times weekly via phone call. the probationer is required to report via phone call every weekday and as instructed. She failed to report on the following dates: April 13 and 14, 2021.

> Failed to attend a weekly group counseling session. The probationer is required to attend a weekly group counseling session and failed to attend on April 6 and 13, 2021.

4th Violation Report (Apr. 16, 2021). The Defendant received her fifth violation after she "admitted to consuming marijuana, 'meth', and alcohol on April 13, 2021, via written declaration." 5th Violation Report (Apr. 20, 2021). Despite several months of compliance,

Probation filed a sixth violation for the Defendant's failure to report "for three times weekly drug testing" on several dates; and missed her weekly group counseling session on November 16, 2021. 6th Violation Report (Nov. 18, 2021).

Although she admitted to ingesting illegal controlled substances, the Defendant received her seventh and eighth violations from Probation. *See* 7th Violation Report (Dec. 2, 2021); *see also* 8th Violation Report (Dec. 9, 2021). For her ninth violation, Probation indicated that she failed to do the following: report to the Probation Office for five (5) times weekly reporting; attend a weekly group counseling session; and submit her Recreational Therapy project. *See* 9th Violation Report (Jan. 6, 2022). After several hearings to address these violations, the court had to issue a bench warrant when the Defendant failed to appear for her court hearing. *See* Bench Warrant (Jan. 14, 2022). However, the warrant was returned that same month.

After the court vacated the bench warrant and released her, she progressed through the program over the next few months until receiving her first violation in Phase III. For her first violation in Phase III, Probation stated that the Defendant failed to: report to the Probation Office as ordered; attend a weekly group counseling session; and refrain from ingesting/consuming illegal controlled substances. *See* 1st Violation Report (Phase III) (June 23, 2022). After the court held a seven-day sanction at the Department of Corrections in abeyance, the Defendant received her second violation for failing to: report to the Probation Office as ordered; attend a weekly group counseling session; and completing a case manager meeting. *See* 2nd Violation Report (Phase III) (July 14, 2022). In response to this violation, the court imposed the seven-day sanction it previously held in abeyance, and transferred the Defendant to traditional probationary supervision. *See* 2nd Amended Commitment Order (July 15, 2022); *see also* Stipulation (Aug. 29, 2022).

**B. Defendant Pocaigue received six (6) violations under traditional probation.**

Upon her transfer to traditional probationary supervision, the Defendant received a total of six (6) violations of probation. Before her first appearance in court following her transfer, the Defendant received three (3) violations. For her first violation, the report indicated that the following:

1. Failure to report to the Probation Office three (3) times a week for drug testing. She last reported on April 3, 2023 and has failed to report since.
2. Failure to submit proof of attendance or completion of a drug rehabilitation program. The probationer was referred to Light House Recovery Center and she last attended treatment on April 3, 2023. Her case was closed due to non-attendance.
3. Failure to make monthly payments towards her four thousand ($4,000.00) dollars fine, eighty ($80.00) dollar court cost, one hundred and sixty ($160.00) confirmation fees. She has failed to make any payments.
4. Failure to submit proof of completion of eighty-four (84) hours of community service.
5. Failure to submit proof of attendance or completion of twelve (12) out of twenty-four (24) sober support meetings.

1st Violation Report (Apr. 26, 2023). For the second violation, the report indicated that the Defendant "submitted to a drug urinalysis and was presumptive positive for methamphetamines... [and] admitted in writing via signed declaration to smoking 'ice' on July 18, 2023." 2nd Violation Report (July 26, 2023). For her third violation, the report indicated that the Defendant failed to report to Probation as ordered despite attempts to contact her. *See* 3rd Violation Report (Aug. 15, 2023). After appearing for a Progress Hearing on September 5, 2023, the Defendant received two (2) more violations. The fourth violation report indicated that the Defendant failed to report to Probation and to submit to drug testing despite the court's instruction. *See* 4th Violation Report (Sep. 8, 2023). For the fifth violation, the report indicated the Defendant's violation of the following conditions:

1. Failure to report to the Probation Office three (3) times a week for drug testing. She last reported on September 5, 2023 and has failed to report since. Attempts

to contact the Probationer have been unsuccessful. On December 18, 2023, a home visit was conducted at the residence on file, the Probationer was not at the residence.

2. Failure to submit proof of attendance or completion of a drug rehabilitation program.
3. Failure to make monthly payments towards her four thousand ($4,000.00) dollars fine, eighty ($80.00) dollar court cost, one hundred and sixty ($160.00) confirmation fees. She has failed to make any payments.
4. Failure to submit proof of completion of one hundred and eight (108) hours of community service.
5. Failure to submit proof of attendance or completion of twelve (12) out of twenty-four (24) sober support meetings.

5th Violation Report (Jan. 3, 2024). At the next Progress Hearing on January 23, 2024, defense counsel noted her physical absence in court was because she tested positive for Covid-19. *See* Progress Hr'g Mins. at 2:43:47PM (Jan 23, 2024). In the Defendant's sixth violation report for her failure to report to Probation, the assigned officer noted that she was present at the last Progress Hearing via telephone where "[s]he was ordered by the Court to report to the Probation Office and meet with the Undersigned; she failed to do so." 6th Violation Report (Feb. 6, 2024).

Because the Defendant failed to appear for her Progress Hearing on April 24, 2024, the court issued a bench warrant for her arrest that day. *See* Bench Warrant (Apr. 30, 2024). After the warrant's return almost two years later on January 30, 2026, the court subsequently vacated the warrant and scheduled a Revocation Hearing. *See* Return of Warrant Hr'g Mins. at 2:22:43PM (Feb. 3, 2026).

In preparation for the Revocation Hearing, the People filed a Motion to Revoke Defendant's Probation and Impose Jail Sentence ("Motion to Revoke"), arguing in favor of probation revocation and imposition of the maximum sentence in light of her violations of the conditions she agreed to follow. *See* Ppl.'s Mot. Revoke (Feb. 17, 2026). In response, the Defendant filed her Opposition to the Motion to Revoke ("Opposition"), indicating that her violations constitute as excusable failures to comply with mandated treatment because of Guam's

shortage of treatment facilities. *See* Def.'s Opp'n (Feb. 19, 2026). At the Revocation Hearing, Probation addressed the Defendant's history of violations and compliance in this case. *See* Revocation Hr'g Mins. at 2:36:06PM (Mar. 19, 2026). After hearing the parties' arguments regarding revocation, the court took the matter under advisement. *Id.*

## DISCUSSION

If the court finds that the Defendant has "inexcusably failed to comply with a substantial requirement imposed as a condition of the order," it may revoke probation and sentence or resentence the offender. 9 GCA § 80.66(a)(2). If a court chooses to revoke probation, the court may sentence the defendant to any sentence that it may have originally imposed. *See* 9 GCA § 80.66(b). However, it shall not revoke probation for a defendant's violation of a condition unless the court determines that revocation "will best satisfy the ends of justice and the best interests of the public" under all circumstances. 9 GCA § 80.66(a)(2).

The Supreme Court of Guam held that "probation is a favor granted by the state, not a right to which a criminal defendant is entitled." *People v. Camacho*, 2009 Guam 6 ¶ 26 (quoting *Parker v. State*, 676 N.E.2d 1083, 1085 (Ind. Ct. App. 1997)). To revoke a defendant's probation, the court must make two determinations. First, the court must "make a factual determination that a violation of a condition of probation has actually occurred." *Camacho*, 2009 Guam 6 ¶ 27 (quoting *Parker*, 676 N.E.2d 1083 at 1085). If the violation is proven, then the court must "determine if the violation warrants revocation of probation." *Id.*

### A. Defendant Pocaigue violated the conditions of her probation.

The standard for determining whether a probationer violated a condition of probation is that "the evidence and the facts be such as reasonably necessary to satisfy the judge that the probationer's conduct has not been as required by the conditions of probation." *Camacho*, 2009

Guam 6 ¶ 30 (quoting *People v. Angoco*, 1998 Guam 10 ¶ 7). When facing revocation, "the defendant bears the burden of showing an excuse for failure to comply with the condition." *Id.* (quoting *State v. Peters*, 609 A.2d 40, 43 (N.J. 1992)).

In this case, the Defendant had accumulated: eleven (11) violations in Adult Drug Court and six (6) violations under traditional probation. The court can factually determine that all these violations actually occurred after reviewing the court's record of events. For instance, the Defendant herself either justified the violations in open court or admitted to them through a written declaration. Based on the violation reports, Probation's testimony at the Revocation Hearing, and the parties' arguments, the court finds that the Defendant has violated multiple conditions of her probation on several occasions.

**B. Defendant Pocaigue's violations warrant revocation of probation.**

With regard to probation revocation, the Supreme Court of the United States has noted that "the State clearly has an interest in punishment and deterrence, but this interest can often be served fully by alternative means . . . [T]he state is not powerless to enforce judgments against those financially unable to pay a fine. For example, the sentencing court could extend the time for making payments, or reduce the fine, or direct that the probationer perform some form of labor or public service in lieu of the fine." *Bearden v. Georgia*, 461 U.S. 660, 671–72 (internal citations and quotations omitted).

As mentioned earlier, the court may revoke probation if it finds that the probationer has "inexcusably failed to comply with a substantial requirement imposed as a condition of the order." 9 GCA § 80.66(a)(2). In other words, a probationer's violation warrants revocation when the violation upsets the intent of the probationary conditions. In *Camacho*, the Supreme Court of Guam held that the probationer's failure to report for drug testing was serious enough to warrant

revocation when considering the condition being violated was treatment. *Camacho*, 2009 Guam 6 ¶ 32. Despite not paying the fine as required under probation, the Supreme Court of Guam reasoned that failure to pay a fine alone was not as serious as not reporting for drug tests, because the defendant was convicted of drug-related offenses and had drug testing listed as a condition of probation to ensure the defendant remained sober. *Id.*

During the Revocation Hearing, Probation indicated that the Defendant had pending conditions including treatment, twelve (12) self-help meetings, a fine balance, UA confirmation fees, and community service hours. *See* Revocation Hr'g Mins. at 2:36:06 – 49:53PM (Mar. 19, 2026). In light of Probation's recitation of the Defendant's history under their supervision, the People argued that her years of failure to complete treatment under her treatment-based plea agreement warrants the imposition of a sentence. *Id.* The Defendant conceded that she messed up with her opportunity to battle her addiction with the ADC team's help as well as her chance to do so through another three (3) years with Probation's assistance. *Id.* As a victim to her circumstances, including loss of both parents, addiction, homelessness, and caring for children, she still was not committing new crimes and has hopes that she can be better. *Id.* The Defendant ultimately asked to hold revocation in abeyance and extend probation for a year one last time. *Id.*

The substantial requirement imposed as a condition in *this* case was the Defendant's completion of treatment. When imposing treatment as a probationary condition, the purpose of doing so was to achieve sustained sobriety for a defendant. To assist the Defendant in her journey to sobriety, the court gave her multiple opportunities before considering revocation, such as providing support through the Adult Drug Court as an alternative to imprisonment at DOC. After terminating the Defendant from the Adult Drug Court program, the court gave her three (3) more years to complete treatment on her own rather three (3) years at the Department of Corrections.

Instead, the Defendant continuously failed to report to Probation and complete her other conditions. Because of this, the court had no choice but to issue a bench warrant. While the court is aware of the difficulties in dealing with addiction, the Defendant cannot expect to overcome her addiction if she will not, at the very least, maintain contact with Probation who can help her receive necessary treatment or social services.

Unless the court determines that revocation "will best satisfy the ends of justice and the best interests of the public" under all circumstances, the court shall not revoke probation for violating a probationary condition. 9 GCA § 80.66(a)(2). From deferring her guilty plea in 2022 to today, the Defendant still has not completed or attended treatment despite her promises to do so. While the court recognizes the circumstances that the Defendant has had to face, treatment for her addiction was the priority in order to avoid confinement at the Department of Corrections.

Because the Defendant has inexcusably failed to comply with treatment as a substantial condition of her probation, the court finds that revocation of the Defendant's probation will best satisfy the ends of justice and the best interests of the public. Therefore, the court grants the People's Motion to Revoke Defendant's Probation and Impose Jail Sentence.

## CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** the People's Motion to Revoke Defendant's Probation and Impose Jail Sentence and **REVOKES** the Defendant's probation in the above-captioned matter. The Court shall issue its Judgment revoking the Defendant's probation and imposing a sentence.

SO ORDERED, JUN 15 2026 .



_____
**HONORABLE ALBERTO E. TOLENTINO**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
acknowledge that an electronic
Copy of the original was e-mailed to
_AOS    PDSC_

JUN 15 2026 Time: 2:43
Evan L. Topasna
Deputy clerk, Superior Court of Guam